## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## ANN ARBOR DIVISION

| | |
|---|---|
| NATALIE R. BROWN, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 5:24-cv-11741 |
| THE LAW FIRM OF DEREK WILLIAMS, LLC d/b/a INFINITE LAW GROUP, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

The Plaintiff NATALIE R.  BROWN ("Plaintiff"), by and through the undersigned, complains as to the conduct of THE LAW FIRM OF DEREK WILLIAMS, LLC d/b/a INFINITE LAW GROUP ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Michigan Credit Services Protection Act ("MCSPA") under M.C.L. § 445.1821 *et seq.*, as well as claims of Breach of Fiduciary Duty, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

1

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Eastern District of Michigan and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Eastern District of Michigan.

PARTIES

4.  Plaintiff is a consumer over 18 years of age residing in Ann Arbor, Michigan, which lies within the Eastern District of Michigan.

5.  Defendant is a credit repair organization and debt management provider that claims to assist consumers with becoming debt free and improving their overall financial health, including their credit scores. Defendant is a limited liability company organized under the laws of the state of Arkansas with its principal place of business located at 400 West Capital Avenue, Suite 1700, Little Rock, Arkansas 72201.

6.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7.   In approximately July of 2022, Plaintiff was interested in attempting to resolve a number of debts appearing on her credit report and which were negatively impacting her credit situation, and began researching various credit repair and debt consolidation companies.

8.   Plaintiff subsequently happened upon Defendant.

9.   Upon speaking with Defendant, Defendant explained the nature of its services and that Plaintiff would make monthly payments to Defendant, with which Defendant would attempt to resolve the various debts Plaintiff would enroll in the program.

10. Defendant further represented that Defendant would get to work promptly and prevent Plaintiff's creditors from contacting Plaintiff.

11. Additionally, Defendant represented, both explicitly and by implication, that ultimately Defendant's services would have a positive impact on her credit score as Plaintiff would be able to resolve obligations faster than if she were to do things on her own, and that its services would reestablish Plaintiff's credit and provide her a fresh financial start.

12. Defendant further repeatedly represented the efficacy of its services and its ability to achieve better results than its competitors.

3

13. Plaintiff thereafter agreed to utilize Defendant's services, and entered into a contract for the provision of such services and enrolled a number of obligations in Defendant's program.

14. Plaintiff began making monthly payments to Defendant which initially totaled approximately $570 per month.

15. Upon information and belief, Defendant withdrew funds from Plaintiff's monthly payments prior to providing any services to Plaintiff and/or before completely performing the services Defendant agreed to perform for Plaintiff.

16. Defendant's conduct in improperly charging Plaintiff for services before such services were fully performed diverted funds from Plaintiff's dedicated account that could and should have gone towards Defendant negotiating Plaintiff's obligation.

17. Upon information and belief, Defendant diverts its customers' funds in this manner so as to intentionally decrease the pool of available money from which Defendant can reach settlements, thus increasing the length of time it takes consumers to pay down their enrolled debts, in turn allowing Defendant to continue to charge unlawful and inappropriate fees for longer than necessary to deliver the represented results.

18. After signing up with Defendant, Plaintiff was told by that, rather than paying her creditors or keeping up with payments, she should instead divert those funds to

Defendant who would use the funds to enter into negotiations with Plaintiff's creditors.

19. Plaintiff believed Defendant's provision of advice was in her best interest; however, Plaintiff subsequently suffered a diminishment to her credit score as she began defaulting on enrolled obligations.

20. Defendant failed to clearly inform Plaintiff of this information prior to Plaintiff signing up with Defendant.

21. Plaintiff maintained her payments to Defendant for approximately 6 months, during which time Defendant demanded that Plaintiff increase her monthly payments to approximately $650 per month.

22. Despite Plaintiff's maintenance of payments, Defendant failed to perform the services it represented would be performed in the manner such services were represented.

23. Defendant failed to resolve any of Plaintiff's obligations after months of payments, despite its representations that settlements would be reached within this timeframe.

24. As a result of Defendant's failures, Plaintiff expressed her desire to cancel Defendant's services due to their ineffective nature.

25. However, Defendant then proceeded to convince Plaintiff to take out a consolidation loan with its lending partner, Versara Lending ("Versara"), which

Defendant represented would go towards resolving all of Plaintiff's enrolled obligations as well as covering Defendant's fees.

26. As a result of the consolidation loan, as well as the increased monthly payments Defendant demanded from Plaintiff, Plaintiff ended up paying substantially more for Defendant's services than what was originally represented as being needed to be debt free.

27. Upon information and belief, Defendant's conduct is part of an overarching pattern and practice of underinflating the true cost of its services and savings it can deliver through its settlement efforts.

28. Furthermore, after Plaintiff received the loan, Defendant represented that all of her enrolled obligations were settled, and subsequently locked Plaintiff out of her account with Defendant.

29. However, contrary to Defendant's representations, not all of Plaintiff's enrolled obligations were resolved and paid down through its services.

30. Plaintiff has been subjected to a litany of negative consequences and has lost tens of thousands of dollars  as a result of Defendant's overarching fraudulent and deceptive scheme of taking consumers' money without providing the services justifying the payments it has received.

31. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

32. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant, further out of pocket expenses, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations and debt management providers.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

33. Plaintiff repeats and realleges paragraphs 1 through 32 as though fully set forth herein.

34. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

35. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

36. At all relevant times, Defendant represented to Plaintiff, both directly and by implication, that successfully completing Defendant's program would, ultimately, result in the overall improvement of Plaintiff's credit history and help reestablish

Plaintiff's credit, at it would allow her to resolve obligations which otherwise would go unresolved.

### a. Violations of CROA §§ 1679b(a)(3)-(4)

37. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

38. Defendant violated the above provisions of the CROA through its generally deceptive representations regarding the nature of the services it would provide Plaintiff. Defendant advised that it would get to work promptly and would handle all of Plaintiff's creditors. However, after months of making payments, Defendant failed to resolve any obligations and Plaintiff was still being harassed repeatedly by her creditors despite Defendant's suggestions that its services would prevent those contacts.

39. Defendant further violated the above provisions of the CROA through the deceptive and misleading manner in which it charges consumers fees in a manner designed to increase the number and amount of payments consumers make to

Defendant for its services. Defendant's charging of premature and unlawful fees depletes the pot from which further settlements can be made, in turn increasing the length of time consumers are subject to Defendant's program and thus subject to further charges.

40. Further, Defendant violated the CROA through its deceptive and misleading instruction that Plaintiff's best course of action would be to cease paying her creditors and instead divert those funds to Defendant. Defendant failed to properly disclose the impact this course would have as it was represented to Plaintiff that, ultimately, Defendant's program would improve her credit. However, its services had the exact opposite effect. Upon information and belief, Defendant has determined that, if it was honest about the true impact of its services, consumers would be reluctant and less likely to sign up for Defendant's services.

41. Defendant further violated the above provisions of the CROA through its fraudulent conduct in making certain representations designed to induce consumer participation in its program, only to cut against those representations in the contracts it enters into with consumers. Defendant engages in this deceptive and misleading conduct in order to get consumers on the hook, only to feebly attempt to justify its failures and conduct through contractual language that runs contrary to its representations made to consumers. That Defendant's contracts with consumers contains a merger and integration clause seeking to remove its representations from

the nature of the parties' relationship only further illustrates the fraudulent and deceptive nature of its conduct.

42. Defendant further violated the above provisions of the CROA through its deceptive and misleading representations regarding the consolidation loan offered. Upon information and belief, Defendant misrepresented the efficacy of this loan and did so in a deceptive effort to recoup further sums from Plaintiff without performing the services it agreed to perform.

43. Defendant further violated the above provisions of the CROA through its deceptive conduct in underinflating the true cost of its services through misleading and deceptive estimates regarding the savings consumers can experience through its services. Although the parties agreed upon a certain payment over a period of time, as Defendant began attempting to resolve obligations, it demanded that Plaintiff increase her monthly payments to Defendant.

44. Defendant further violated the above provisions of the CROA through its fraudulent conduct in taking Plaintiff's money, telling her it had resolved all of her obligations, locking Plaintiff out of her account, despite Defendant failing to resolve the obligations as represented. Defendant essentially stole Plaintiff's money for its own benefit without providing the services it said it had performed for Plaintiff, causing Plaintiff further financial distress.

**b. Violations of CROA § 1679b(b)**

45. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

46. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant charged Plaintiff various monthly fees before fully completing any of the services it agreed to perform for Plaintiff.

### c. Violations of 15 U.S.C. § 1679c

47. The CROA, pursuant to 15 U.S.C. § 1679c, outlines a number of disclosures that credit repair organizations must provide to consumers prior to contracting with consumers for the provision of services.

48. Defendant violated the above provision of the CROA through its failure to provide Plaintiff the disclosures it was required to provide to Plaintiff.

### d. Violation of CROA § 1679f(b)

49. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

50. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant's contract contains a number of provisions which attempt to broadly shield itself from liability against protections afforded under CROA. Defendant's contract further seeks to apportion costs and fees amongst litigants in a manner contrary to the protections provided by the CROA. Furthermore, Defendant's contract contains a merger and integration clause which constitute an attempt by Defendant to insulate itself from liability in connection with the manner in which it represented its services to Plaintiff prior to Plaintiff signing up with Defendant.

51. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, NATALIE R. BROWN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.  Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE MICHIGAN CREDIT SERVICES PROTECTION ACT

52. Plaintiff restates and realleges paragraphs 1 through 51 as though fully set forth herein.

53. Plaintiff is a "buyer" as defined by M.C.L. § 445.1822(a).

54. Defendant is a "credit services organization" as defined by M.C.L. § 445.1822(b)

### a.  Violation of MCSPA § 445.1823

55. The MCSPA, pursuant to M.C.L. § 445.1823, provides a list of prohibited conduct for credit services organizations.

56. Pursuant to M.C.L. § 445.1823(b), a credit services organization cannot "charge a buyer or receive from a buyer of services money or other valuable consideration before completing performance of all services the credit services organization has agreed to perform for the buyer."

57. Defendant violated § 445.1823(b) of the MCSPA in much the same way it violated § 1679b(b) of the CROA.

58. Pursuant to M.C.L. § 445.1823(d), a credit services organization cannot "make or use a false or misleading representation in the offer or sale of the services of a credit services organization." Similarly, pursuant to M.C.L. § 445.1823(e), a credit services organization cannot "engage, directly or indirectly, in a fraudulent or

13

deceptive act, practice, or course of business in connection with the offer or sale of the services of a credit services organization . . . ."

59. Defendant violated §§ 445.1823(d)-(e) of the MCSPA in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

60. Pursuant to M.C.L. § 445.1823(f), a credit services organization cannot "fail to perform the agreed upon services within 90 days following the date the buyer sings the contract for services."

61. Defendant violated § 445.1823(f) when it failed to perform the services within 90 days of the parties' agreement.

WHEREFORE, Plaintiff, NATALIE R. BROWN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to M.C.L. § 445.1824(1);

c.  Awarding Plaintiff punitive damages pursuant to M.C.L. § 445.1824(1);

d.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to M.C.L. § 445.1824(1); and,

e.  Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT III – BREACH OF FIDUCIARY DUTY

62. Plaintiff restates and realleges paragraphs 1 through 61 as though fully set forth herein.

14

63. Defendant owed Plaintiff a fiduciary duty arising out of the nature of their relationship. Defendant was purporting to provide legal-services to Plaintiff, inherently rendering it her fiduciary with regards to the financial services it was agreeing to perform.

64. Defendant breached its fiduciary duty owed Plaintiff given the nature of the "services" it provided. Despite purporting to have Plaintiffs' best interest in mind, Defendant caused Plaintiffs significant hardship through its provision of objectively and unreasonably misguided advice and completely failing to resolve Plaintiff's obligations in the manner represented. Defendant completely disregarded the fiduciary duty it owed Plaintiff in furtherance of its own bottom line, and Defendant's breach of such duty caused Plaintiff significant financial harm as well as emotional distress.

WHEREFORE, Plaintiff, NATALIE R. BROWN, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff  reasonable attorney's fees and costs;

e. Enjoining Defendant from continuing its unlawful conduct; and,

f. Awarding any other relief as the Honorable Court deems just and appropriate

Dated: July 5, 2024                              Respectfully submitted,


s/ Ahmad T. Sulaiman
Ahmad T. Sulaiman, Michigan Bar No. P82149
Counsel for Plaintiff
Admitted in the State Bar of Michigan
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x124 (phone)
(630) 575-8188 (fax)
ahmad.sulaiman@sulaimanlaw.com

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Eastern District of Michigan
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8181 x113 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com